[No. 18537.   Department One.   September 11, 1924.]

GRAYS HARBOR COMMERCIAL COMPANY, *Respondent*, v.
YAKIMA VALLEY PRODUCERS ASSOCIATION, *Defendant*,
AMERICAN FRUIT GROWERS, INCORPORATED, .
*Appellant*.[1]

GUARANTY (9)—CONTRACT—CONSTRUCTION—EXTENT OF LIABILITY.
There was no guaranty of trade acceptances for a car of cantaloupe
crates, not then loaded and shipped, where it appears that there
were three cars of crates, only two of them loaded at the time of
shipment, in response to telegrams reciting advice from the broker
that the crates "are now loaded" directing shipment at once and
stating that the guarantor "will endorse trade acceptance" for cars
shipped "the 24th and car now loaded," the last car referred to not
being then loaded or shipped until three weeks later.

SAME (9).   In such a case, the fact that "ship at once" means
within a reasonable time, is not controlling, since the contract con-
stitutes an endorsement of trade acceptances only of cars loaded at
the time.

Appeal from a judgment of the superior court for
Yakima county, Gilbert, J., entered October 4, 1924,
upon findings in favor of the plaintiff, in an action on
contract, tried to the court.   Reversed.

*Henry H. Wende* and *Kerr, McCord & Ivey*, for ap-
pellant.

*Geo. F. McAulay*, for respondent.

MACKINTOSH, J.—This case was determined below
and argued here on the theory that the appellant was
liable on a written guarantee of the payment of a trade
acceptance.   The facts are these:  The Yakima Valley
Producers Association had given a trade acceptance to
the respondent for a consignment consisting of 30,000
cantaloupe crates, ordered by the association from the
respondent.   On July 24 there was sent to one Miller,
the manager of the appellant, the following telegram:

[1]Reported in 228 Pac. 600.

"Yakima, Wash., July 24, 1922.

"E. E. Miller, Savoy Hotel, Seattle, Washington. Grays Harbor Commercial Co. Cosmopolis, Washington, from whom association cantaloupe crates come want word direct from American Fruit Growers that they will endorse trade acceptances. Please wire them to this effect. Rush message as cars loaded. R. C. Schreiber."

Schreiber, the sender of this telegram, was a broker in Yakima who had received the order from the producers association for the crates and who, through another broker, ordered the crates from the respondent. To this point the transactions had all occurred in Yakima. On July 25 Miller, from Seattle, sent the following telegram:

"Seattle, Wash., July 25, 1922
"Grays Harbor Commercial Co.,
   "Cosmopolis, Washington.
   "Schreiber advises cantaloupe crates now loaded for Yakima Valley Producers Association on their order ship at once and we will endorse trade acceptance on same.           "American Fruit Growers Inc."

The respondent, on receipt of this telegram at its office in Cosmopolis, was somewhat at a loss to understand why a telegram should come from Seattle, as it understood that the appellant's place of business was in Yakima, and consequently called up the Yakima office to confirm the delivery, and on the following day, July 26, the Yakima office sent the respondent the following letter:

"American Fruit Growers
      "Incorporated
   "Yakima Valley Division.
         "Yakima, Wash., July 26, 1922.
"Grays Harbor Commercial Company,
   "Cosmopolis, Washington.
   "Gentlemen: Regarding your telephone conversation today, we will endorse trade acceptances for cars

shipped the 24th and car now loaded with cantaloupe crates for Yakima Valley Producers Association.

"Yours very truly,
"American Fruit Growers Inc.
"(Signed) A. E. Jacob,
"Accountant."

The testimony shows that the 30,000 crates constituted three carloads; two of the carloads were shipped to the association around July 25, and the trade acceptances on these two were endorsed and paid for by the appellant. This case arises out of the third carload, which was not shipped from Cosmopolis until August 15 and delivered to the association on August 22. The question is whether the letter and telegram sent by the appellant to the respondent constituted a written guaranty, and the answer calls for an interpretation of these two instruments.

It will be noticed that these communications originated from a telegram which referred to cars loaded, and the appellant's telegram refers to cars "now loaded" and says it will endorse the trade acceptances "on same," which, of course, refers to crates which were already loaded. That this was what was in the mind of appellant is further clarified by the letter of the following day which states that the appellant will endorse the trade acceptances for cars shipped the 24th (as a matter of fact there was only one car shipped that day), and car "now loaded," plainly indicating the intention of the appellant to only endorse the trade acceptances for the crates which were in cars for shipment to the association, that is, cars already going or loaded and about to go in the usual course of business immediately. There is nothing in the language of these instruments that seems capable of a construction broad enough to cover a shipment which did not take place until three weeks thereafter. The respondent argues,

of course, that this letter and telegram covered the entire shipment of 30,000 crates, and that the appellant is bound to pay for the third car because the telegram of July 25 means that the appellant will endorse the trade acceptance on the order already made by the association, which was to be shipped at once, and that "at once" means within a reasonable time, and that three weeks was such a reasonable time. The term "ship at once" means "with all reasonable haste consistent with fair business activity." The record does not show, and the court is not possessed of the judicial knowledge requisite to determine, whether reasonable haste was used in this case. We are cognizant, of course, that the cantaloupe season is a short one and that the product is highly perishable and consequently must be handled rapidly, but as to the exact length of the season or what it was, particularly in 1922, we have no means of determining, therefore it is impossible to say, as a matter of law, that the August shipment did not comply with the requirement of "at once;" but, as we view it, this question is not in this case. The telegram and letter, reasonably read, are not subject to the construction that they constitute an endorsement of the trade acceptances on other than the cars already shipped and the car which at that time was loading, and the car in this suit having been then neither shipped nor loaded did not come within the appellant's guaranty.

As the action was originally brought it contained the theory that, in addition to the written promise to endorse the trade acceptance, there was an independent promise, but the court ruled out all of the testimony going to prove the independent promise, and the respondent having apparently acquiesced in that ruling and not having presented any argument here to sus-

tain recovery on that theory, we must take it that this question is now out of the case.

For the reasons stated, the judgment is reversed and the action dismissed.

MAIN, C. J., HOLCOMB, TOLMAN, and PARKER, JJ., concur.